MARTHA J. TAYLOR *et al.*

*v.*

ALVIN PEGRAM *et al.*

*Filed at Springfield, June 16, 1894.*

1. WILLS—*mental capacity—old age and loss of memory.* Advanced age and loss of memory do not necessarily and of themselves indicate a want of capacity to dispose of property by will.

2. SAME—*inequality of disposition as evidence of undue influence.* Inequality in the distribution of property is not of itself conclusive evidence of undue influence. It may be considered as a circumstance tending to establish undue influence, but a testator may give one child more than another, without invalidating his will.

3. SAME—*setting aside will for undue influence.* Undue influence, which will justify the setting aside of a will, must be such as to deprive the testator of his free agency; and a witness may properly give his

observation as to the condition and surroundings of a testator, so that the court and jury may be able to determine whether his act is the offspring of his own or of another's will.

4. SAME—*evidence as to the will power of testator—whether too remote.* On the contest of a will, a subscribing witness spoke of the testator as a man who could not be easily persuaded "when he made up his mind what he wanted to do." The witness also spoke of talking with the testator just before the will was drawn, and at the supper table just after: *Held*, that the remark of the witness might be considered as applicable to a time sufficiently near the execution of the will.

5. SAME—*opinion as to mental capacity.* An assessor, who visited the testator for the purpose of assessing his land, was asked, whether in his opinion he could have purchased the testator's lands at less than their real value. The object of the question, in a general way, was to elicit the opinion of the witness as to the mental capacity of the testator to protect his property interests: *Held,* that the question was possibly objectionable, as calling for an opinion upon a matter to be determined by the jury; but that the error was not sufficient to reverse, as the witness had testified to the facts upon which his opinion was based.

6. On the contest of a will, which is attacked on the ground of incapacity in the testator, a witness will have the right to state any fact known to him in relation to the testator's capacity to transact business, and all he knows in regard to the vigor or strength of his mental powers. Neighbors and acquaintances, if men of good common sense, are competent to give their opinion as to his mental capacity.

7. SAME—*statement of testator as to his disposition of property by former wills.* A testator made his last will in 1889, which was attacked for want of sufficient capacity and for undue influence. He had made two prior wills, one in 1882 and the other in 1886, and it was admitted that he was of sound mind and free from any undue influence when he made the former wills. He made statements about the time of the execution of the prior wills, as to the manner in which he disposed of his property by them. The disposition, which he stated in 1882 and 1886, that he had then made, approximated very nearly to the provisions of the last will: *Held*, that this circumstance tended to rebut the idea that undue influence had been exercised to procure the execution of the last will, and that proof of such statements was unobjectional, even if conceded that the time of the utterance was too remote from the time of the execution of the last will, for the purpose of establishing mental capacity.

8. SAME—*presumption of destruction of former will.* As a general rule, if a will is traced into the testator's possession, and at his death can not be found, the presumption is (in the absence of anything tending to show the contrary) that he destroyed it *animo revocandi.*

9. SAME—*evidence of mental capacity too remote—when no ground of reversal.* In determining the validity of a will, the mental capacity of the testator is that which exists at the time of the execution of the will. But if some of the testimony has reference to transactions which are too remote in time, its admission will not be sufficient ground to recover, when the preponderance of the evidence shows mental capacity at the time when the will was made.

10. SAME—*contest—degree of evidence to show want of mental capacity.* On the contest of a will, the court instructed the jury that when a will is proved, including soundness of mind and memory of the testator, by the testimony of two subscribing witnesses, and unsoundness of mind is alleged as a ground for setting the will aside, the fact of insanity or unsoundness of mind must be established with reasonable certainty by a preponderance of all the evidence; the evidence of insanity or unsoundness of mind should preponderate, or the will must be taken as valid, etc.: *Held,* that by the use of the words "with reasonable certainty," if standing alone and not explained, the instruction stated too severe and exacting a rule, and the words complained of might well have been omitted.

11. SAME—*poor memory as evidence of want of testamentary capacity.* A failure of memory is not sufficient to prevent the testator from making a valid will, unless it is total, or extends to his immediate family and property.

12. On the contest of a will, the court told the jury that the owner of property, who has capacity to attend to his ordinary business, has the lawful right to dispose of it, either by deed or by will, as he may choose; and that it requires no greater mental capacity to make a valid will than to make a valid deed; and that if such an owner chooses to disinherit his heir, he has a legal right to do so, and such disposition of his property is valid, whether it be reasonable or unreasonable, just or unjust, and that the reasonableness or justice or propriety of the will are not questions for the jury to pass upon: *Held,* that the instruction was unobjectionable.

13. SAME—*statements of testator to invalidate—not admissible.* As in the case of deeds, the parties making wills can not invalidate them by their own parol declarations made previously or subsequently. Therefore, an instruction that statements made by a testator, either before or after the execution of his will, in conflict with its provisions, do not invalidate it, or modify it in any manner, is properly given.

14. SAME—*contest—evidence to overcome the presumption of sanity.* Where the subscribing witnesses have testified to the testamentary capacity of the testator, the party asserting the validity of the will must prevail, unless the contradictory evidence is sufficient to overcome, not only such affirmative testimony, but the presumption arising from the

general rule of law. that all men are presumed to be of sound mind until the contrary is shown. Hence, it is not sufficient that the evidence raises a mere doubt as to the sanity of the testator; the evidence must preponderate in favor of his unsoundness of mind. The preponderance need not be such as to remove all doubt, but such as is according to the reasonable probability of the truth of the charge of unsoundness.

15. SANITY—*presumption that insanity shown continues.* The presumption that insanity once shown continues, only obtains when there is proof of an habitual or apparently confirmed insanity. Prior incompetency or insanity of the testator, arising from temporary causes, accidental derangement, or the violence of disease, does not create a presumption of the continuance of the unsoundness of mind up to the time of the execution of the will.

16. WITNESS—*competency of party seeking to set aside a will.* A party to a suit to contest the validity of a will, who is directly interested in the event thereof, a defendant defending as the devisee of a deceased person, is not a competent witness to impeach the will.

17. SAME—*objection as to competency.* Where a question put to a witness is objected to on the ground of his incompetency, it is not necessary to repeat the special ground of objection to every question thereafter asked of the witness.

18. INSTRUCTIONS—*need not be repeated.* The refusal to give a proper instruction can work no harm, when its substance is embodied in other instructions which are given.

APPEAL from the Circuit Court of Greene County; the Hon. GEORGE W. HERDMAN, Judge, presiding.

Mr. MARK MEYERSTEIN, and Mr. JAMES M. RIGGS, for the appellants:

"A person who is not an expert, may give his opinion concerning the mental capacity of a testator, after *first* detailing the particular facts and circumstances upon which he bases his judgment." *Roe* v. *Taylor,* 45 Ill. 485; *Bible Society* v. *Price,* 115 id. 642.

Under the decisions of this court, inequality of distribution is a strong circumstance to be considered in determining whether the execution of a will has been procured by undue influence. *Salisbury* v. *Aldrich,* 118 Ill. 199; *Lindsey* v. *Lindsey,* 50 id. 79.

It has been held by high authority, that where a will is unreasonable in its provisions, and inconsistent with the duties of the testator, with reference to his property and family, this of itself will impose upon those claiming under it the necessity of giving some reasonable explanation of its unnatural character. 1 Redf. Wills (4th ed.) * p. 515, sec. 14.

Mr. J. R. WARD, Mr. H. H. MONTGOMERY, Mr. HENRY T. RAINEY, and Mr. THOMAS HENSHAW, for the appellees:

An inequality in the distribution of property by will is not unlawful, and is not evidence of unsoundness of mind, but it is regarded in law as a mere circumstance, which may be considered in determining whether unsoundness or undue influence existed. *Schneider* v. *Manning,* 121 Ill. 385; *Salisbury* v. *Aldrich,* 118 id. 202.

A parent may dispose of his property by will as he chooses, and discriminate among his children, giving one or more a greater part of his estate than the others, and if the parent has sufficient soundness of mind to understand the provisions of his will, it will be regarded valid. *Wiley* v. *Ewalt,* 66 Ill 32; *Heuser* v. *Harris,* 42 id. 429; *Salisbury* v. *Aldrich, supra.* See also *Meeker* v. *Meeker,* 75 Ill. 270; *Rutherford* v. *Morris,* 77 id. 422; *Kimbell* v. *Cuddy,* 117 id. 214; *Schneider* v. *Manning,* 121 id. 383.

As to undue influence: *Roe* v. *Taylor,* 45 Ill. 491; *Carmichael* v. *Reed,* 45 id. 108; *Brownfield* v. *Brownfield,* 43 id. 152; *Shinn* v. *Shinn,* 91 id. 477; *Yoe* v. *McCord,* 74 id. 44; *Reynolds* v. *Adams,* 90 id. 147; *Massey* v. *Huntington,* 118 id. 80.

All men having an opportunity of knowing the testator were competent to give their opinion, the same as experts, upon the state of the mind of the deceased. Jarman on Wills, chap. 3, p. 115; *Rutherford* v. *Morris,* 77 Ill. 403; *Meeker* v. *Meeker,* 75 id. 268; *Roe* v. *Taylor,* 45 id. 485; *Buchanan* v. *McLennan,* 105 id. 59.

TAYLOR *et al.* *v.* PEGRAM *et al.* 111

Brief for the Appellees. Opinion of the Court.

It requires no greater capacity to make a will than to make a valid deed. *Schneider* v. *Manning*, 121 Ill. 384; *Yoe* v. *McCord*, 74 id. 34; *Carpenter* v. *Calvert*, 83 id. 62; *Trish* v. *Newell*, 62 id. 196; *Freeman* v. *Easly*, 117 id. 317; *Meeker* v. *Meeker*, 75 id. 262.

Previous conduct and declarations of the testator are always admissible. *Shailer* v. *Burmstead*, 99 Mass. 122, 124; *McTaggart* v. *Thompson*, 14 Pa. St. 149.

Legal soundness of mind, until inquest had, is a presumption of law, to be overturned by proof only of *incompetency at the time of the act in question.* Prior incompetency or insanity of the testator, arising from temporary causes, does not create presumption of after incompetency. *Lilly* v. *Waggoner*, 27 Ill. 395; *Trish* v. *Newell*, 62 id. 196; *Rutherford* v. *Morris*, 77 id. 409.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This is a bill filed by the daughters of Nathaniel H. Pegram, who died testate on October 1, 1889, against his sons, to set aside his will, which was executed on August 20, 1889, upon the alleged grounds of mental incapacity and undue influence. An answer was filed by the defendants denying the allegations of the bill, to which answer a replication was filed. The issues were submitted to a jury, who returned a verdict, finding the writing read in evidence to be the last will and testament of the deceased, and that he was of sound mind and memory at the time of making the same, and that he was not induced to make said will by undue influence on the part of the defendants. Motions to set aside the verdict, and for new trial, were overruled, and decree was entered, sustaining the will and the probate thereof, and for costs against the complainants, and dismissing the bill. From such decree the present appeal is prosecuted.

The testator, who lived in Greene county, was 82 years old at the time of his death, and left surviving him a widow and eight children: four daughters, complainants below and appellants here, and four sons, defendants below and appellees here. All of said children were grown and married. The testator's estate consisted of 436 acres of land, claimed by appellants to have been worth about $22,500.00, and by appellees to have been worth about $18,000.00, and personalty consisting for the most part of promissory notes, claimed by appellants to have amounted to about $17,000.00, and by appellees to have amounted to about $10,000.00. By the terms of the will, he devised 40 acres of the land with the house on it to his wife for her life, and also bequeathed to her the household furniture and a small amount of personalty. He bequeathed to each of his daughters, Martha J. Taylor, Maria L. Graham, and Mary E. Kelly, the sum of $2,000.00; and to his sons, Alvin Pegram and Edward B. Pegram, the executors named in the will, in trust, the sum of $2,000.00, for the use of his daughter, Caroline Vineyard, during her natural life, to be invested by said trustees, the interest to be paid to her during her life, and the principal to go at her death to her children, but if she should die without leaving any child, then to go to her brothers and sisters, or their descendants. All the personalty remaining, after making these devises, was to be equally divided among all the children. The testator, by his said will, devised all his real estate, subject to the life estate of his wife in said forty acres, to his four sons, said Alvin and Edward B. Pegram, and James B. and Nathaniel H. Pegram, with a provision that, if any one of his sons should refuse to pay any note or notes with the interest thereon which might be due from them and unpaid to him at his death, then the interest of such son in said lands was to be charged with the payment thereof.

*First*, after a careful examination of the evidence, we are unable to say that the verdict of the jury was not correct. The proof preponderates in favor of the testator's mental capacity and against the exercise of any undue influence over him by his sons before he made his will on August 20, 1889, and at that time. On the afternoon of that day he sent for a neighbor, F. M. Fishback, and a lawyer, H. C. Withers, both of whom had known him about thirty years. He took Mr. Withers into the parlor and produced his papers, among which were a former will and some notes held by him against his sons. He indicated what changes he wished to make in the disposition of his estate in the new will, to be substituted for the old one, asked if the notes against his sons were barred by the statute of limitations, and stated that he desired the lands to be charged with their payment, as the legacies to his daughters would be paid out of the amounts to be collected on them. The will was read over to him; several hours were spent in fixing its terms and in drawing it, and then Mr. Fishback was called in, and he and Mr. Withers signed the will as witnesses. None of the appellees were present at that time, but Mrs. Kelly, one of the appellants, and her husband and children were in the house when the will was executed. Mr. Kelly was the messenger, who was sent to call Mr. Withers to the house to draw the will. After it was signed, the testator invited his guests to take supper with him, and took part in the conversation at the supper table. Withers and Fishback both swear, that he was mentally capable of transacting the ordinary business of life at that time. All the facts and circumstances connected with the execution of the will, and the occurrences preceding and following it, indicate that the deceased was in full control of his faculties and free from the domination of any undue influence. Some of the proof shows, that at times he seemed to suffer from some of the infirmities of old age, including a defective

memory, but advanced age and loss of memory do not, necessarily and of themselves, indicate a want of capacity to dispose of property. (*Francis* v. *Wilkinson,* 147 Ill. 370.) Much stress is laid upon the fact, that the daughters have not received as much as the sons have received by the terms of the will. But inequality in the distribution of property is not of itself conclusive evidence of undue influence. It may be considered as a circumstance tending to establish undue influence, but the testator may give one child more than another,. without invalidating the will. (*Francis* v. *Wilkinson, supra.*) In the present case, the jury evidently did not think that such inequality as exists in the testator's disposition of his property was sufficient to establish undue influence, when considered in connection with the facts and circumstances negativing the exercise of such influence.

*Second,* objection is made to the reception and rejection of evidence. It is said, that the attorney, who drafted the will, and was one of the subscribing witnesses thereto, was improperly allowed to state, that he observed no indication of the exercise of undue influence upon the mind of the testator, in order to bring about the execution of the will. Undue influence, which will justify the setting aside of a will, must be such as to deprive a testator of his free agency. (*Francis* v. *Wilkinson, supra.*) A witness may properly give his observation of the condition and surroundings of a testator, so that the court and jury may be able to determine whether his act is the offspring of his own, or of another's, will.

The other subscribing witness spoke of the testator as a man, who could not be easily persuaded "when he made up his mind what he wanted to do"; and it is objected, that this statement was not limited to the time when the will was made, or to a period near that time. We think, that the remark can be considered as applicable to a time sufficiently near the execution of the will, as the witness speaks

of talking with the testator on the porch of his house just before the will was drawn, and at the supper table just after that occurrence.

A witness, who was an assessor, and visited the testator for the purpose of assessing his lands, was asked whether, in his opinion, he could have purchased the testator's lands at less than their real value. The object of the question, in a general way, was to elicit the opinion of the witness as to the mental capacity of the testator to protect his own property interests. The question was, perhaps, objectionable, as calling for the opinion of the witness upon a matter to be determined by the jury, under the ruling upon a similar, but more general question, in *Schneider* v. *Manning*, 121 Ill. 376. But the error is not sufficient to reverse the judgment. The witness had stated the facts in regard to the assessment of the testator's lands. He had the right to state any fact known to him in relation to the capacity of the testator to transact business, "and all he knew in regard to the vigor or strength of his mental powers." (*Schneider* v. *Manning, supra.*) Neighbors and acquaintances of the deceased, if men of good common sense, are competent to give their opinions as to his mental capacity. (*Rutherford* v. *Morris*, 77 Ill. 397.)

It seems, that the testator had, before the execution of the present will, made two other wills, one in 1882 and one in 1886. One or two witnesses were questioned as to the testator's statements made, about the time of the execution of these former wills, upon the subject of the manner in which he had therein disposed of his property. It is admitted, that the testator was of sound mind, and free from the control of any undue influence, when he made the former wills. The disposition, which he stated in 1882 and 1886, that he had then made of his property, approximated very nearly to the provisions of the will now in contest. This circumstance tended to rebut the idea, that undue influence had been exercised to procure the execution

of the last will. (*Roe* v. *Taylor*, 45 Ill. 485.) In this respect, proof of the statements so made by the testator was not objectionable, even if it should be conceded, that the time of their utterance was too remote from the time of the execution of the last will to justify their admission, for the purpose of establishing mental capacity. If it was necessary to show the destruction of the former wills, where the purpose and bearing of the testimony in regard to them were such as have been indicated, and wheie no specific objection was made that such testimony was secondary in its character, we think, upon looking into the record, that there was sufficient evidence of such destruction. Moreover, the former wills were revoked by the terms of the last will, and were not found at the testator's death. As a general rule, if a will is traced into the testator's possession, and, at his death, can not be found, the presumption is (in the absence of circumstances tending to show a contrary conclusion) that he destroyed it *animo revocandi.* (1 Jarman on Wills–Bigelow's 6th ed.–marg. p. 124; 2 Greenl. on Ev., secs. 681, 688a; *Snider* v. *Burks*, 84 Ala. 53.)

It is true, that the mental capacity to be considered is that which exists at the time of the execution of the will, and that some of the witnesses speak of the capacity of the testator to transact ordinary business during several years before the execution of the will. While some of this testimony may have had reference to transactions which were too remote in time, yet its admission can not be regarded as affording sufficient ground for reversal, because there was so much other evidence tending to show mental capacity at the time when the will now in contest was made.

It was proposed to prove by Mrs. Kelly, one of the complainants in the bill, that some of the defendants had made statements to the deceased as to the manner in which they desired him to make his will. Objection was made and sustained, and exception taken. Mrs. Kelly was not a com-

petent witness. She was one of the complainants, a party to the proceeding, and directly interested in the event thereof, and the defendants were adverse parties defending as the devisees of a deceased person. (1 Starr & Cur. Stat., chapter 51, section 2, p. 1072.) Although the objection made was general, yet a specific objection, based upon the incompetency of the witness, had been made to a former question, and it was not necessary to repeat the special ground of the objection to every question thereafter asked, especially as the incompetency of the witness appeared from the allegations of the bill, and from her own testimony, and from her relations to the suit and to the parties, and to the transactions involved, as shown by the record.

*Third,* error in the giving and refusal of instructions is assigned. The third instruction given for the proponents is as follows:

"The jury are instructed, that when a will is proved, including soundness of mind and memory, on the part of the testator, by the testimony of two subscribing witnesses, and unsoundness of mind is alleged as a ground for setting the will aside, the fact of insanity or unsoundness of mind must be established with reasonable certainty by a preponderance of all the evidence; the evidence of insanity or unsoundness of mind should preponderate, or the will must be taken as valid. If there is only a bare balance of evidence, or a mere doubt only of the sanity of the testator, or of his unsoundness of mind, the presumption in favor of sanity, if proven as above stated, must turn the scale in favor of the sanity of the testator."

The material portion of this instruction is an almost literal transcript of the language used by this court in *Myatt* v. *Walker*, 44 Ill. 485. In that case, a bill was filed to set aside a deed, because of the alleged unsoundness of mind of the grantor, and, in the decision, it was said: "When unsoundness of mind is alleged as a ground for setting aside a deed, the fact must be established with reasonable cer-

tainty.   If there is only a balance of evidence, or a mere
doubt of the sanity of the maker of the deed, the presump-
tion in favor of sanity must turn the scale in favor of its
validity.   To destroy the binding effect of the deed, the
evidence must decidedly preponderate.''   The objection
made to the instruction is the use of the words: "with
reasonable certainty.''   It is said that, by the use of
these words, the instruction lays down a rule which
is too severe and exacting.   We would be disposed to
agree with counsel if these words are considered by
themselves.   They might well have been left out.   But
we think that, when considered in connection with the rest
of the third instruction, and with other instructions which
were given, they can not be regarded as requiring unsound-
ness of mind to be established "beyond a reasonable
doubt.''   It has been held that, in a criminal case, proof
"to a moral certainty,'' and proof "beyond a reasonable
doubt,'' are equivalent expressions.   (*Com.* v. *Costly*, 118
Mass. 1.)   In such a case, the accused party is entitled to
the benefit of the legal presumption in favor of innocence,
and his guilt must be proved beyond a reasonable doubt.
In civil cases, however, "it is not necessary that the minds
of the jurors be freed from all doubt; it is their duty to
decide in favor of the party on whose side the weight of
evidence preponderates, and according to the reasonable
probability of truth.''   (1 Greenl. on Ev., sec. 13a; 3 id.
sec. 29.)   Where the subscribing witnesses have testified
to the testamentary capacity of the testator, the party as-
serting the validity of the will must prevail, unless the con-
tradictory evidence is sufficient to overcome not only such
affirmative testimony, but the presumption arising from
the general rule of law, that all men are presumed to be of
sound mind until the contrary is shown.   (*Carpenter* v.
*Calvert*, 83 Ill. 62.)   Hence, it is not sufficient that the ev-
idence raises a mere doubt as to the sanity of the testator;
the evidence must preponderate in favor of his unsound-

ness of mind. The jury were told, not only in the third, but also in the fifth and eleventh instructions given for the proponents, that it was sufficient if the unsoundness of the testator's mind and memory should be shown by a preponderance of the evidence. The preponderance need not be such as removes all doubt, but such as is according to the reasonable probability of the truth of the charge of unsoundness. In this particular case, the evidence so far establishes the correctness of the verdict, that the contestants of the will can not be said to have been injured by the use of the words complained of. ( *Gray* v. *Merriam*, 148 Ill. 179.)

Objection is made to the sixth instruction, upon the alleged ground, that it ignores the presumption of a continuance of insanity once shown to exist. Such presumption only obtains where there is proof of an habitual or apparently confirmed insanity. Prior incompetency or insanity of the testator, arising 'from temporary causes, or accidental derangement, or the violence of disease, does not create a presumption of the continuance of the unsoundness of mind up to the time of the execution of the will. ( *Trish* v. *Newell*, 62 Ill. 196; 1 Greenl. on Ev., sec. 42.) The instruction is not erroneous in the respect indicated, because it makes reference only to proof made by the contestants of temporary incapacity, proceeding from bodily pain and physical weakness, and not to proof of habitual or confirmed unsoundness of mind. There is no proof of the latter character in the record, so far as we have been able to discover.

Objection is made to the fourteenth instruction, because it told the jury, that, if the testator's mind was sound, although his memory may have been impaired, he might be of sound mind and memory in the sense in which the phrase is used in law. Such is the doctrine of *Yoe* v. *McCord*, 74 Ill. 33. A sound mind is not incompatible with a poor memory. Failure of memory is not sufficient

to prevent the testator from making a valid will, unless such failure of memory is total, or extends to his immediate family and property.   ( *Yoe* v. *McCord, supra.* )

Instruction 21 is claimed to be erroneous.   It told the jury, that the owner of property, who has capacity to attend to his ordinary business, has the lawful right to dispose of it, either by deed or by will, as he may choose; and that it requires no greater mental capacity to make a valid will than to make a valid deed, and, that, if such an owner chooses to disinherit his heir, he has a legal right to do so, and such disposition of his property is valid, whether it be reasonable or unreasonable, just or unjust, and that the reasonableness, or justice, or propriety of the will are not questions for the jury to pass upon.   Such an instruction as this was approved of in *Schneider* v. *Manning,* 121 Ill. 376, and, for the reasons stated there, can not be regarded as objectionable here.

Complaint is made of instruction No. 25, which instructed the jury, that statements made by the testator, either before or after the execution of the will in question, in conflict with the provisions of said will, do not invalidate it or modify it in any manner.   We can not see why this instruction does not state the law correctly.   "As with deeds, so with wills,—the parties making them can not invalidate them by their own parol declarations made previously or subsequently."   ( *Dickie* v: *Carter,* 42 Ill. 376.)

Other instructions given for the proponents are objected to, but after a careful examination of them, and a comparison of the principles announced in them with former decisions of this court, we are disposed to regard them as substantially correct.

It is further assigned as error, that the court refused to give for contestants an instruction, that, under the law, a person may be mentally competent to make a disposition of a small estate among a few persons, and yet at the same time not possess sufficient mental capacity to dispose of a

large estate among a greater number of persons. The doctrine of the instruction has been endorsed by this court. (*Trish* v. *Newell*, 62 Ill. 196.) It can not be said, in this case, that the estate disposed of was very large; but, if there be evidence in the record upon which the instruction could be properly based, its refusal could have done no harm, as its substance was embodied in other instructions which were given for the contestants.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*