PETER KAENDERS *et al.*

*v.*

MARY MONTAGUE *et al.*

*Opinion filed June 17, 1899.*

1. WILLS—*reasonableness or justice of will—how far to be considered by jury.* The owner of property has the right to dispose of the same by will as he chooses, and the reasonableness or justice of the provisions are not questions for the jury, except as they may be considered with other evidence as bearing upon the issue of mental capacity or undue influence.

2. SAME—*testator's prior declarations are admissible to rebut charge of undue influence.* Where undue influence is charged, prior wills and

other declarations of the testator in substantial harmony with the provisions of the will in contest are admissible, as tending to rebut the charge of undue influence. (*Harp* v. *Parr*, 168 Ill. 459, commented upon and followed.)

3. SAME—*instructions must be accurate when evidence is close.* The jury must be accurately instructed in a will contest where the evidence on the issues of mental capacity and undue influence is close.

APPEAL from the Circuit Court of Madison county; the Hon. M. W. SCHAEFER, Judge, presiding.

This is a bill, filed by the appellees, Mary Montague and Ella Cody, against the appellants to set aside the will of Annie Squire, deceased. Answers were filed to the bill by the executors, Kaenders and McNulty, who were also devisees under the will, and by Adelaide F. Beattie, another devisee under the will. The will sought to be set aside bore date September 19, 1896. The question of the validity of the will was submitted to the jury, who returned a verdict finding that the writing produced, executed on September 19, 1896, purporting to be the will of Annie Squire, was not her will. Motion for a new trial was overruled, and a decree was entered by the circuit court in accordance with the verdict, and adjudging the costs of the suit against the defendants. The present appeal is prosecuted from the decree so entered.

Annie Squire, who lived at Venice in Madison county, died on October 3, 1896, leaving the will aforesaid, dated September 19, 1896, and leaving no husband, and no child or descendant of a child surviving her, but leaving, as her only heirs-at-law, four nieces, children of a deceased brother and of two deceased sisters, said nieces being the appellees, Mary Montague, Ella Cody, Annie Montague and Julia Slighton. The will is as follows:

"*In the name of God, Amen:* I, Annie Squire, of Venice, Madison county, Illinois, being of sound and disposing mind and memory, do make, publish and declare this my last will and testament, hereby revoking and making void all former wills by me at any time heretofore made.

"*First*—I desire all my just debts and funeral expenses to be paid as soon after my death as possible.

"*Second*—I leave to George F. McNulty, as trustee, five hundred dollars ($500), to be invested in United States bonds or in St. Louis city bonds, and the interest to be annually expended to keep in good order and repair the lot my husband, children and myself will be interred in: *Provided, however,* if the Calvary Cemetery Association shall agree to keep said lot in repair forever, said trustee may, at his option, give said five hundred dollars ($500) to said cemetery association or its trustees.

"*Third*—In case I have not purchased another lot in said Calvary cemetery before my death, and remove the bodies of my husband and children there, then it is my will that my executors hereinafter named purchase a lot in said cemetery costing not more than two thousand dollars ($2000), and remove the bodies of my husband and children there and see that I am buried there.

"*Fourth*—I give to the Catholic priest who is the pastor of St. Mark's Catholic church at Venice, Illinois, at the time of my death, the sum of eleven hundred dollars, he to hold the same in trust and apply it for the following purposes, namely: One hundred dollars ($100) is to be used in having masses said for the repose of my soul; one thousand dollars is to be used for the Roman Catholic parish school in the parish of St. Mark's at Venice, Madison county, State of Illinois.

"*Fifth*—I have made a contract with George H. Norman to make for me a marble monument, for which he is to be paid, when it is finished and erected in the cemetery, the sum of eight hundred and seventy-nine dollars ($879). It is my will that said monument be placed in the cemetery as soon as my executors, hereinafter named, shall have purchased another lot in Calvary cemetery and have removed to it the bodies of my husband and children.

"*Sixth*—I give to my nieces, Julia Slighton, Ella Cody, Mary Montague and Annie Montague, the sum of one

dollar each. It is my will that none of my relatives or my husband's relatives shall have or take any of my property, except the sum of one dollar as above given to each of my said nieces.

"*Seventh*—I give to Adelaide Frances Beattie, of St. Louis, Missouri, who is my dearest and kindest friend, all my clothing and such of my household furniture and effects as she may desire.

"*Eighth*—I give to George F. McNulty the sum of one thousand dollars.

"*Ninth*—After the payment of the above legacies and bequests, which, if the personal property I leave is not sufficient to pay them, they are to be a charge upon my real estate until paid, then the rest and residue of my property, of whatsoever name or nature and wheresover situated, I devise and bequeath to my dearest friend, Adelaide Frances Beattie, of St. Louis, State of Missouri, she to own the same absolutely. My friend, the said Adelaide Frances Beattie, has during all her life been a kind, dear friend to me, and since the death of my husband and daughter, Mary, she has been very kind, in every way, to me, and during my illness she has been constant in her kindness and attention to me, and to reward her as well as I can is the reason I make the said Adelaide Frances Beattie my residuary legatee in this my last will and testament.

"*Tenth*—I constitute and appoint Rev. Peter Kaenders, of Venice, Madison county, Illinois, and George F. McNulty, executors of this my last will and testament, and I do not wish them to give any bond or security as such executors. I give to my said executors full power to sell and convey any real or personal property I may own at my death.

"In witness whereof I have hereunto set my hand and seal this 19th day of September, A. D. 1896.

ANNIE SQUIRE.   [Seal.]"

HADLEY & BURTON, and GEORGE F. MCNULTY, for appellants.

JOHN G. IRWIN, and J. P. VASTINE, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

It is sought to set aside the will attacked by the bill in this case upon the ground of want of testamentary capacity in the testatrix, and upon the ground of the exercise of undue influence over her.

It is assigned as error by the counsel for the appellants, that the verdict of the jury is not sustained by the evidence. At the close of all the testimony the defendants below asked the court to instruct the jury, "that, under the evidence in this case, they must find that the instrument in writing dated September 19, 1896, purporting to be the last will and testament of Annie Squire is the last will and testament of Annie Squire." This instruction was refused, and it is claimed that its refusal by the court below was error.

The case is exceedingly close upon the facts. The three subscribing witnesses to the execution of the will, and seven other witnesses acquainted with the deceased, swear that she was of sound mind and memory at the time of the execution of the will. Indeed, the proof shows that, when the testatrix made her will, she was of sufficiently sound mind and memory to remember the amount and nature of her property, the various relatives and friends to whom she might desire to distribute the same by will, and to enable her to make an intelligent disposition of her estate among them at the time the will was signed. At that time, although she was feeble in body and mind from sickness, she had sufficient capacity to understand the particular business in which she was then engaged.

It is claimed, however, that, while she was at that time capable of transacting the ordinary business affairs

of life, such as settling accounts and collecting and paying out money, etc., yet that she was subject to a morbid or insane delusion upon subjects connected with the disposition of her property by will, and as to the natural objects of her bounty. It is contended that this insane delusion was in reference to her nieces and the relatives of her husband. By the sixth clause of her will she gives to her four nieces the sum of one dollar each, and then says: "It is my will that none of my relatives or my husband's relatives shall have or take any of my property except the sum of one dollar as above given to each of my said nieces." The will gave all her property away from her relatives and from the relatives of her husband. This ignoring of such relatives by her will is attributed by the appellees to the existence of the insane delusion above referred to.

It has been said by this court, "that there may be insanity without the general business capacity of the individual being affected thereby." (*American Bible Society* v. *Price*, 115 Ill. 623). Where there is insane delusion in regard to those who are the objects of the testator's bounty, and in regard to his duty or moral obligation to make a will in favor of a particular individual, corporation or society, and a will is made as the result of that delusion, it cannot be sustained. (*American Bible Society* v. *Price, supra*). The evidence to establish the insane delusion contended for is slight in the present case, although it may be sufficient to have justified the trial court in submitting the question to the jury.

It is true, that Mrs. Squire made bequests in her will to her lawyer, to her priest, and to her intimate friend who was with her in her last sickness. But it is well settled, that the owner of property, who has capacity to attend to his ordinary business, has the lawful right to dispose of such property, either by deed or by will, as he may choose; and the reasonableness or justice or propriety of the will are not questions for the jury to pass

180—20

upon, although the unreasonableness of a testamentary disposition of property may be considered as a mere circumstance, tending to show unsoundness of mind or undue influence in connection with all the other facts and circumstances proven in the case. (*Taylor* v. *Pegram,* 151 Ill. 106; *Nicewander* v. *Nicewander,* id. 156).

In view of the fact that the evidence in this case upon the questions of unsoundness of mind and of the exercise of undue influence is close, it was important that the jury should be correctly instructed. The eleventh instruction given by the court for the contestants below, who are the appellees here, is as follows:

"The court further instructs the jury that the declarations and statements of Annie Squire were admitted in evidence for the purpose of illustrating and showing her mental condition; and are not to be considered as having any legitimate bearing upon any question involved in the case, except as to her soundness or unsoundness of mind and memory at the time of making the instrument, which purports to be her will."

We regard this instruction as erroneous under the facts developed by the testimony in the case. It is broad enough to include two wills which were made by Mrs. Squire before the execution of her last will, dated September 19, 1896. It is also broad enough to include certain declarations and statements, made by her prior to the execution of her last will, which were in conformity with the provisions of the will itself. She made a will on July 25, 1896, and another on August 13, 1896. These wills were canceled and supplanted by the will of September 19, 1896, but they were both introduced in evidence without objection. As they had been canceled, they amounted to mere declarations of the testatrix as to her intentions at the respective times of their execution in regard to the disposition of her property. Several of the provisions contained in these prior wills were the same as provisions contained in the will finally executed by

her.   These prior wills it was proper for the jury to consider, inasmuch as they furnished some evidence to rebut the idea of undue influence having been exercised to procure the execution of the last will.

Where a testator, being of sound mind and free from the control of any undue influence, disposes of his property by a prior will, and the disposition, which he thereby makes of his property, approximates very nearly to the provisions of the will which is contested, such circumstance tends to rebut the idea, that undue influence has been exercised to procure the execution of the last will. (Roe v. Taylor, 45 Ill. 485; Taylor v. Pegram, 151 id. 106). We have also held that, where a will is charged to have been executed through undue influence, the declarations of the testator made before its execution are admissible by way of rebuttal to show his intention as to the disposition of his property, upon the ground that a will made in conformity with such declarations is more likely to have been executed without undue influence than if its terms are contrary to such declarations.   (Harp v. Parr, 168 Ill. 459; Goodbar v. Lidikey, 136 Ind. 1).

The rule, as above stated, in regard to prior declarations which are in harmony with the provisions of a contested will, in no way conflicts with the well settled rule, that statements made by the testator either before or after the execution of a contested will, which are in conflict with the provisions thereof, do not invalidate or modify such will in any manner.   Parties making wills cannot invalidate them by their own parol declarations made previously or subsequently. (Taylor v. Pegram, supra; Dickie v. Carter, 42 Ill. 376).

The eleventh instruction given by the court evidently had the effect of excluding from the consideration of the jury all the declarations of the testatrix in harmony with the provisions of her last will, which were made by her prior to the execution thereof, whether such declarations were made orally or were embodied in the previous wills.

As the declarations thus excluded had a tendency to re-
but the proof of the contestants, which tended to show
the exercise of undue influence in the making of the last
will, the giving of the eleventh instruction was unfair to
the appellants.

For the error above indicated, the decree of the circuit
court is reversed, and the cause is remanded to that court
for further proceedings in accordance with the views
herein expressed.                    *Reversed and remanded.*

Subsequently, upon considering this case on rehear-
ing, the following additional opinion was filed:

Per CURIAM: Since granting the rehearing in this
cause we have given it further consideration and have
reached the same conclusion announced in the opinion
heretofore filed.

The contention that *Harp* v. *Parr*, 168 Ill. 459, (cited
in support of the holding that the eleventh instruction
was erroneous,) is in conflict with former decisions of
this court, ignores a clear distinction pointed out in the.
*Harp case* and in the above opinion. The authorities are
not harmonious on the subject, but the geneal rule rec-
ognized by this court is, that prior declarations of a tes-
tator are not admissible to prove undue influence. That
rule, however, is applicable only in cases where the dec-
larations and statements are offered for the purpose of
varying or controlling the operation of the contested
will, and not to those in which the will is in harmony
with the declared intentions of the testator. The reason
for the distinction is pointed out in the above opinion
and the cases there cited. It is also clearly stated in
*Hill* v. *Bahrns*, 158 Ill. 314, where we said (p. 318): "And
it is held that a prior will, and statements and declara-
tions of the testator made at a time when his mental ca-
pacity was undisputed, as to the manner in which he had
disposed of his property by a prior will which has been
destroyed, are admissible in evidence, where it appears

that such disposition of his property by such prior will is approximately the same as that made by the contested will, as tending to rebut the idea of undue influence."

The cases cited by counsel for appellees in support of their petition are all cases in which the declarations and statements were sought to be introduced to vary the terms of the will being contested, and the general rule above indicated was strictly applicable. Keeping in mind the proper distinction between the two classes of cases there is no conflict or want of harmony in our decisions.

The foregoing opinion will be re-adopted and the decree below reversed and the cause remanded, as there directed.

*Reversed and remanded.*