CHARLES L. THOMPSON

*v.*

ALICE J. BENNETT *et al.*

*Opinion filed December 18, 1901.*

1. WILLS—*rule as to sufficiency of evidence where court directs verdict in will case.* The statute requires the issue as to the validity of a will to be submitted to a jury, and hence, if the court directs a verdict, the same rule as to the sufficiency of the evidence must be applied by a court of review as is applied to verdicts in suits at law.

2. SAME—*contestants have the burden of overcoming the prima facie case.* In a chancery proceeding to contest a will the defendants make a *prima facie* case in favor of the will by introducing the will and proof of death and the certificate of the subscribing witnesses, and the burden is then upon the contestants to overcome the same.

3. SAME—*degree of evidence necessary to overcome prima facie case in favor of will.* The evidence introduced by the contestants after the proponents have made a *prima facie* case must be sufficient to overcome or neutralize the effect of the affirmative testimony given in favor of the will.

4. UNDUE INFLUENCE—*that a man married for money is no proof of subsequent undue influence.* The fact that a man may have married a woman for the selfish object of acquiring an interest in her property is not, of itself, any proof of the subsequent exercise of undue influence by him in procuring his wife to draw her will in his favor.

5. SAME—*undue influence must have overcome testator's free agency.* Undue influence which will justify setting aside a will must be such as to deprive the testator of his free agency, and mere persuasion, request or advice is not such influence.

6. SAME—*undue influence must be connected with execution of the will.* Fraud or undue influence, to render a deed or will invalid, must be connected with the execution of the instrument and be operating when it is made.

CARTER, J., dissenting.

APPEAL from the Circuit Court of Lawrence county; the Hon. P. A. PEARCE, Judge, presiding.

This is a bill, filed in the circuit court of Lawrence county on March 29, 1899, by the appellant, Charles L. Thompson, a minor, suing by his next friend, against appellees, Alice J. Bennett and others, heirs of Eliza Ellen

Helm, deceased, for the purpose of setting aside the will of Eliza Ellen Helm, mainly upon the ground that she executed her will through undue influence exercised over her by her husband, Squire B. Helm.

Answers were filed by all the heirs of the deceased testatrix, who were defendants to the bill, except the husband, substantially admitting the allegations of the bill. But on May 12, 1900, the husband of the deceased testatrix, Squire B. Helm, and one Charles Correll, purchaser from the husband of a part of the property devised to him, filed their joint and several answer, denying all the allegations of the bill which charged the exercise of undue influence in obtaining the will. Exceptions were filed by the complainant to the latter answer, but the court overruled the same as to the matter appearing therein in regard to the probate of the will. Replications were filed to all the answers. A jury was called, and the cause proceeded to trial. Two issues were presented to the jury to be determined. "First, was the writing introduced in evidence purporting to be the last will and testament of Eliza E. Helm, the last will and testament of Eliza E. Helm or not? Second, was the writing purporting to be the last will and testament of the said Eliza E. Helm obtained by the undue influence of the said Squire B. Helm?" Upon the trial Squire B. Helm and Charles Correll, defendants below and proponents of the will, introduced the original will, proof of the death of the testatrix, and the certificate of the subscribing witnesses to the will, and then rested. The complainant below, appellant here, then introduced his testimony bearing upon the question of undue influence. At the close of the testimony of the appellant, the complainant below, the court instructed the jury to find that the writing in evidence was the last will and testament of Eliza E. Helm and had not been obtained by the undue influence of her husband, Squire B. Helm. The jury found in accordance with the instruction of the court. The court

thereupon dismissed the bill at the cost of the complainant and awarded execution, to which the complainant excepted. The present appeal is prosecuted from the decree so entered by the circuit court.

In the spring of 1888 Eliza Ellen Thompson, then a maiden woman thirty-six or thirty-seven years of age, living upon a farm in Lawrence county with her bachelor brother, Charles Thompson, and keeping house for him, was married to the appellee, Squire B. Helm, who was then engaged in farm work as an employe of her brother, and at the time living in the same house with her and her brother. On March 19, 1889, Mrs. Helm made a will leaving to her husband, Squire B. Helm, all her property, both real and personal, and appointing him her executor. The will was made at Vincennes, Indiana, and was executed in the presence of three witnesses who signed the attesting clause, to-wit: Thomas S. Bailey, James P. L. Weems and C. F. Weems. On November 2, 1889, Mrs. Helm died testate, leaving the will above mentioned. After her marriage and about December, 1888, her brother, Charles Thompson, with whom she lived, died intestate. Mrs. Helm, at the time of her death on November 2, 1889, had no children, nor any father or mother. She left surviving her, as her only heirs-at-law, her husband, Squire B. Helm, two sisters, Frances J. Warner and Lucinda Pinkstaff, and certain nephews and nieces, to-wit, Minnie W. Thompson, Jennie Rice, John R. Thompson and the appellant, Charles L. Thompson, children of a deceased brother named John R. Thompson; and also William O. Pinkstaff and Laura Applegate, children of a deceased sister named Elizabeth A. Pinkstaff. Lucinda Pinkstaff lived until December 26, 1895, and died testate, leaving, as her devisees and legatees, her sister, Frances J. Warner, and two children of Frances J. Warner, to-wit, Lee Warner and Alice J. Bennett. The only one of the heirs left by her, who was a minor at the time of filing this bill, is the appellant Charles

L. Thompson. The record shows that the appellant, although under twenty-one years of age, is and was a married man at the time of filing the bill herein.

S. Z. LANDES, for appellant.

GEE & BARNES, for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The principal question in this case is, whether or not the trial court erred in instructing the jury to find in favor of the proponents of the will. Although some claim was made at the beginning of the litigation that the testatrix, Eliza E. Helm, was not of sound mind and memory when she made her will, yet that claim was abandoned, and the issue presented to the jury was simply whether the will was made as the result of undue influence exercised over her by her husband.

Two significant and undisputed facts stand out prominently upon the record. One of these is, that this bill, contesting the validity of the will, was not filed until nearly ten years after the death of the testatrix. Mrs. Helm died on November 2, 1889, and this bill was filed by her nephew, the appellant herein, on March 29, 1899. The Statute of Wills requires, that a proceeding to contest the validity of a will shall be begun within two years after the probate of the same. The present appellant, being a minor, undoubtedly had a right to file the bill at the time when it was filed, but it is a noticeable fact that none of the adult heirs of the deceased testatrix, Mrs. Helm, took any steps to contest the validity of the will during the period from its probate in Lawrence county on November 5, 1889, and the filing of the present bill on March 29, 1899.

The other significant fact is, that the devisee in the will of the testatrix was her husband, the person who, under all the circumstances, would naturally be the re-

cipient of her bounty. Having no children and no parents, and having, a few months before she made her will, lost the brother, with whom she lived and for whom she kept house, she would naturally select her husband, as her devisee, upon grounds of relationship and affection.

It is true, that the statute requires the issue as to the validity of a will to be tried by a jury. Hence, if the court takes a case, involving such an issue, from the jury and directs a verdict against the contestants, the same rule must be applied that obtains in respect to trials in suits at law. In *Purdy* v. *Hall*, 134 Ill. 298, where a bill was filed to set aside the probate of a will, we said (p. 303): "The rule in actions at law is, that when the evidence given at the trial, with all the inferences that could justifiably be drawn from it, is so insufficient to support a verdict for the plaintiff, that such a verdict, if returned, must be set aside, the court is not bound to submit the case to the jury, but may direct a verdict for the defendant. * * * It is manifest, then, that, if the evidence introduced by appellant was such that it would, in the absence of any rebutting testimony on the part of appellees, have justified a verdict in her favor, then the court erred in instructing the jury to return the verdict they did. And it is equally plain, that if the reverse of this proposition be true, then there was no error in the action of the court."

The question, then, is whether the evidence introduced by the appellant, the contestant in this case, was such as would have justified a verdict in favor of the appellant. That is to say, was the evidence given at the trial with all the inferences that could justifiably be drawn from it, so insufficient to support a verdict for the appellant that such verdict, if returned, must have been set aside by the court? When the proponents of the will, upon the trial below, introduced the will itself, and proof of death, and the certificate of the subscribing witnesses, a *prima facie* case was made in favor of the valid-

ity of the will. . The burden of proof then shifted to the shoulders of the contestant, the appellant here, who is seeking to impeach the validity of the will. The testimony, introduced by the proponents of the will, raised a presumption in favor of the execution of the will by the testatrix as her voluntary act, and this presumption continued to be valid unless disproved by counter-testimony. The burden was thereby placed upon the appellant of showing the incompetency of the testatrix to make the will through the exercise of undue influence by proof sufficient to overcome the *prima facie* case made by the proponents of the will. The opposing testimony, introduced by the contestant after the *prima facie* case made by the proponents of the will, must be sufficient to overcome or neutralize the effect of the affirmative testimony already given in favor of the will. (*Holloway* v. *Galloway*, 51 Ill. 159; *Johnson* v. *Johnson*, 187 id. 86).

After a careful examination of all the evidence, we are satisfied that the court below properly instructed the jury, and that the evidence does not tend to show the exercise of any undue influence by the appellee, Helm, over his wife in the matter of the execution of her will.

Appellant relies upon the circumstances connected with and attendant upon the marriage between the parties as showing the exercise of undue influence. Helm went to live with, and work for, Charles Thompson in November, 1887, and was married to Eliza E. Thompson in May, 1888. He was ten years younger than she was. She was afflicted at the time he married her with a tumor in the womb, and it is claimed that her condition of health was such as to make it improper for her to marry. The evidence tends to show that she was a bright woman mentally, and, while it might be a violation of a nice sense of propriety in any man to marry a woman so much older than himself and whose health was precarious, yet we cannot say that these facts argue any fraudulent intent on his part. The evidence shows that he was a kind

husband. All the witnesses admit this. His attentions to her and care for her seem to have been as delicate as though he were himself a nurse.

When the marriage took place, she was the owner of eighty acres of land worth about $40.00 an acre, and a very small amount of personal property. After her marriage, and in December, 1888, her brother died, and she inherited from him four hundred and forty acres of land, in addition to the eighty acres which she already owned, and a considerable amount of personal property. It can not be said that Helm married her for the purpose of acquiring the property inherited from her deceased brother, because her brother did not die until some time after the marriage. Even if his object had been the selfish one of acquiring an interest in what property she had when he married her, we are not prepared to say that this fact, standing by itself, was any proof of the exercise of undue influence over her at a subsequent date during their married life.

The circumstances, connected with the execution of the will, do not indicate that there was any undue influence. It is true that, according to the testimony, Helm went to Vincennes some time in the early part of February, 1889, and asked a lawyer whether a woman could make a will and leave her property to her husband. He was given an affirmative answer, and left stating that the lawyer might be called upon to make such a will. Some time after this in February, 1889, Mrs. Helm went to Vincennes and called upon the lawyer in question in company with a cousin of hers, named Laura Thompson, and said to him that she desired to have her will drawn. She remained in his office with her cousin for some time, talking about the matter. He suggested to her that her cousin could be one of the witnesses to the will, and he would be the other. She left, however, without executing the will at that time. Several weeks afterwards she returned to the same lawyer alone, and signed the will

which he had drawn, and at the same time the will was witnessed by the subscribing witnesses, whose names are set forth in the statement preceding this opinion. At neither visit to the office of the lawyer, who was to draw her will, was she accompanied by her husband. He was not present when the will was executed by her. If Mrs. Helm had died intestate, her husband would have been entitled, under the statute, to all of her personal property and one-half of her real estate, and dower in the other half, as she left no children. The presumption is that she knew what he would inherit from her in case of her intestacy, as *ignorantia legis neminem excusat.*

The testimony, which is relied upon to show that she executed the will at the dictation of her husband, consists mainly of statements alleged to have been made by him to third persons after his wife's death. The testimony is as to remarks alleged to have been made by Helm on the roadside or in the field in casual conversations with farm-workers; and these remarks are testified to fully ten years after they are alleged to have been made. One of these witnesses was a man, who asked of Helm that he give or lend him money as a consideration for his testimony in his favor, and met with refusal. It appears that the four hundred and forty acres of land, inherited by Mrs. Helm from her brother, was swampy and marshy land, worth but little, and that, during the nine or ten years since her death, Helm has improved the land by ditching it and clearing it. The testimony tends to show that it cost him some $7.00 per acre to ditch it and $8.00 per acre to get it cleared and ready for the plow. There is proof in the record, tending to show that this proceeding was begun because of the increase in the value of the land resulting from his improvement of it. There is much evidence that looks in the direction of an attempt to extort money.

"It has often been decided by this court, as well as others, that mere persuasion or advice, however impor-

tunate, will not justify the setting aside of a will." (*Wilcoxon* v. *Wilcoxon*, 165 Ill. 454). A wife may be influenced by affection to leave her property by will to her husband; but influence secured through affection is not wrongful. (*Nicewander* v. *Nicewander*, 151 Ill. 156; *Francis* v. *Wilkinson*, 147 id. 370; *Burt* v. *Quisenberry*, 132 id. 385). Even though it were clearly shown that Helm asked his wife to make a will in his favor, we are not prepared to say that such request establishes the exercise of undue influence over her. Undue influence, which will justify the setting aside of a will, must be such as to deprive the testator of his or her free agency. (*Taylor* v. *Pegram*, 151 Ill. 106; *Francis* v. *Wilkinson*, *supra*). We discover nothing in this record to indicate that Mrs. Helm was not a free agent in all that she did in the matter of making her will.

Some of the witnesses say that, when the physicians told her that she was afflicted with this tumor, and that an operation would some time be necessary, and that such operation would be dangerous and might prove fatal, she was somewhat depressed in her mind, and did not show the same life and animation as theretofore. But there is nothing to show that this depression was of such a character as to weaken her mind to the extent of destroying her free agency.

The testimony shows that she consulted a physician in Vincennes, who told her that an operation would be necessary in order to remove the tumor. The physician declined to perform the operation himself, and advised that a doctor living in Cincinnati should be sent for to make an examination. The Cincinnati physician came to Vincennes, and made an examination, but declined to perform the operation there, and advised Mrs. Helm that she should go to Cincinnati, and stay at a dispensary, and have the operation performed there, where she could have better care and the services of trained nurses. In October, 1889, she went with her husband to Cincinnati to have the operation performed. He left her there un-

der the charge of the physicians, and came home. When the time came for performing the operation, he went back, and she died in Cincinnati as the result of the operation. It is sought to make it appear, that Helm induced his wife to go to Cincinnati to have the operation performed, knowing that it would result in her death. Although there are insinuations to this effect, there is no evidence even tending to sustain such a charge. He merely did what the physicians in Vincennes, and an eminent doctor from Cincinnati, had previously advised.

Moreover, all these transactions in reference to the performance of the operation with a view of removing the tumor occurred more than six months after the will was made. They could have had no effect in inducing the execution of the will, and such testimony was improper for the purpose of showing undue influence in the making of the will. The fraud, or undue influence, which will render a will or deed invalid, must be connected with the execution of the instrument, and operating when it is made. (*Francis* v. *Wilkinson, supra*).

Inasmuch as the evidence does not tend to support the charge as to the exercise of undue influence, the trial court would have been obliged to set aside a verdict in favor of the contestant in this case, if such verdict had been rendered. Therefore, under the rule already announced, the court was not bound to submit the case to the jury, but was authorized to direct a verdict for the defendants, who are the proponents of the will.

Accordingly, the decree of the circuit court, dismissing the bill, is affirmed.      *Decree affirmed.*

Mr. JUSTICE CARTER, dissenting.

This case was originally assigned to the late Justice PHILLIPS, but, as he prepared no opinion, the case has been re-assigned since his death.