Mr. Justice Nobb
delivered the opinion of the Court:
Count 1 must stand or fall upon the averments found therein. The question is, had this been the sole count in the indictment, and a demurrer had been interposed thereto, what would have *132 been the ruling of the court? Under sec. 842 of the Code [31 Stat. at L. 1327, chap. 854] the crime of “false pretenses” is made- out when it is shown that a person “by any false pretenses, with intent to defraud, obtains from any person anything of value,” etc. This count alleges that the defendant, with intent to defraud, falsely pretended and represented to Nellie McKeown that one Owen was then engaged in the business of contracting and building in this city; that he needed a large quantity of lumber; that this lumber could be purchased by said Owen in the State of Virginia at much lower prices than in the District of Columbia, but that to do so cash was required; that Owen was desirous of so purchasing lumber; that he had theretofore contracted with the defendant to procure the money necessary to purchase the said lumber as aforesaid; “that, by reason of the low prices at which said lumber was to be so purchased, as well as by reason of the terms of said contract, persons who would invest money with him, the said John 0. Davis, for the purpose of purchasing said lumber in the manner aforesaid, would receive large profits upon their said investmentThese representations are set out as the efficient inducement to the person defrauded to part with the $500 check. Giving the words employed their natural interpretation, we think the inference dedueible therefrom to be that the relation of borrower and lender, and not that of principal and agent, was alleged to exist between the defendant and Miss McKeown.
Owen, according to the indictment, was a builder, needed lumber, and could himself purchase it in Virginia for cash much cheaper than in the District of Columbia. To enable him, the said Owen, to so purchase lumber, he entered into a contract with Davis, Davis agreeing to procure the money for Owen’s use. All this he represented, according to the indictment, to Miss McKeown. He then told her that, by reason of the contract he had with Owen, which it must be presumed was advantageous to Davis, if she would “invest money with him, the said John C. Davis,” she would receive large profits upon her “said investment.” We see nothing in this language *133 indicating that Davis was to receive money from Miss Mc-Keown as her agent. There is nothing indicating privity between Owen and Miss McKeown, bnt, on the contrary, such an inference is repelled by the statement that the profits were to result from the contract between Owen and Davis. We are therefore impelled to the conclusion that this count charges the defendant with having obtained from Miss McKeown $500 by means of false pretenses, and with intent to defraud her.
The rule in the Federal courts to the effect that in a criminal case a general judgment upon an indictment containing several counts, and a verdict of guilty on each count, cannot be reversed on error if any count is good and is sufficient to support the judgment (Claassen v. United States, 142 U. S. 140, 35 L. ed. 966, 12 Sup. Ct. Rep. 169, and Evans v. United States, 153 U. S. 584, 38 L. ed. 830, 14 Sup. Ct. Rep. 934, 9 Am. Crim. Rep. 668), does not apply to the situation in this case, for here the verdict was upon counts charging distinct and inconsistent offenses. Had there been a defective count charging embezzlement among several good counts charging the same offense, or a defective count in false pretenses among several good counts charging that offense, and the verdict had been upon one set of counts,—namely, either upon those in embezzlement or upon those in false pretenses,—the ruling in the Olaassen and Evans Cases would have applied.. Com. v. Lowrey, 158 Mass. 18, 32 N. E. 940. The verdict', of the jury in the supposed case would not be an inconsistent' verdict, as was the verdict in the present case. It is apparent,, as the trial court pertinently suggested, that the “verdict under the embezzlement counts negatives one essential fact in the-crime of procuring money by false pretenses, namely, the devesting of the title originally.” The verdict, therefore, upon the 1st and 3d counts was absolutely inconsistent, as under the-1st count the jury found that Miss McKeown became devested, of the title to the $500 check, while by their verdict in the 3d. count they expressly found that she did not. It is not the province of the court to conjecture which theory the jury would! have adopted had their attention been drawn to the matter- *134 That is a question for their determination. For obtaining $35 or more by false pretenses the punishment may be three years imprisonment. The punishment of an agent guilty of embezzlement may be a fine of $1,000 and imprisonment for ten years. It therefore makes quite a difference of which offense a defendant is convicted.
While the proffered instruction which the court refused referred to the first three counts, it is apparent that the first two counts were in mind, and that it was intended to bring to the attention of the court the difference between the two sets of counts, to the end that the jury might receive such instruction as would prevent the bringing in of an inconsistent verdict. In the light of what followed, we think it was reversible error for the court to omit such instruction.
The defendant introduced in evidence a record of the criminal court of New Hanover county, North Carolina, showing that at the March term, 1892, of the said court, in the case of the State against the said defendant, the question was submitted to the jury, “Is the defendant now insane?” to which the jury responded, “Yes;” that thereafter the court, on the 26th of April, 1892, rendered judgment upon said verdict that “the said defendant, John C. Davis, is now insane,” and “that he be committed to the North Carolina Insane Asylum * * * until he is restored to sanity, when the same shall be certified to the solicitor of the proper district in order that proper steps be taken to secure the appearance of the said defendant to answer the original indictment in this action.” It further appeared from the evidence adduced by the defendant, that upon the rendition of said judgment the defendant was committed to said asylum, “and there remained until early in the year 1901, at which time, when he was about to be discharged from said asylum, the defendant escaped therefrom, and was never thereafter returned.” The testimony in behalf of the defendant further tended to show that at the time of his reception at said asylum, and while so confined therein, he was of unsound mind, suffering from a form of insanity known as paranoea. Evidence was also introduced by the de *135 fendant tending to show that he had ever thereafter been of unsound mind.
The evidence of the government, in rebuttal, tended to show that during the whole period the defendant was confined in said asylum and ever thereafter he was not insane, but was of sound mind.
Counsel for the defendant requested the court to instruct the jury that, because of the adjudication of insanity by the North Carolina court, the defendant must be presumed to have been insane at the time of the alleged commission by him of the offenses charged in the indictment before the jury, and that the burden was upon the government to overcome such presumption, by establishing, to the satisfaction of the jury beyond any reasonable doubt, that the defendant at the time of said alleged offenses had been restored to sanity and was then sane.
Upon this branch of the case, the court instructed the jury in part as follows: “There, instead of going to trial as he has here, a preliminary question was raised as to whether he was sane at the time, so that he could be tried. That is a course that may be taken. * * * Here, the case itself is being tried, and it will be for you to say, on the evidence, whether or not he is guilty by reason of insanity, and if you find that he is insane, that you return a verdict in the form of ‘Not guilty by reason of insanity.’ In North Carolina the other course was taken, and it was found that he was of unsound mind. There is nothing in the record of that judgment to show that the form of his insanity was, or whether it was of a permanent or temporary character, so that the judgment itself does not enlighten us. We have got to find out, as best we can, from the testimony here, as to his condition. But you are bound, I think, to take it as a fact, because it was so adjudged, and I give you that as the law, that he was insane at the time of that adjudication; but that does not amount to a finding that he had any permanent type of insanity,—only that he was then insane. * * * If you find from all the testimony that the type of insanity he had down there was permanent in its character, then the presumption of continuation attaches, *136 and it would be like any other piece of evidence-;- it would have to be removed by proof. It would be presumed that he continued to be insane, until the evidence satisfies you beyond a reasonable doubt, that he had been restored to sanity.” It is unnecessary to quote further from the charge.
The North Carolina court adjudged the defendant then insane. That the form of his insanity was not considered necessarily permanent is evident from the language of the court,, for he was to be detained until “restored to sanity,” when the proper officer of the State was to be notified. When “about to-be discharged from said asylum,” that is, when about restored to sanity, he escaped. We cannot assume from this record, .as requested by the defendant, that the form of insanity from which he was then suffering was of a permanent or continuing charácter, and unless it was of such a character the defendant was not entitled to the instruction asked. Taylor v. Pegram, 151 Ill. 106, 37 N. E. 837; Kirsher v. Kirsher, 120 Iowa, 337, 94 N. W. 846; People v. Schmitt, 106 Cal. 48, 39 Pac. 204; Underhill, Crim. Ev. § 156; Wharton, Crim. Ev. 9th ed. ¶ 730; 12 Cyc. Law & Proc. p. 389. This was the-view of the trial court, and the instruction on this point was-correct.
It is insisted that, inasmuch as the sentence under indictment No. 26,690 was to begin upon the day of the ending' of the sentence on the judgment under the McKeown indictment, the judgment in the second case should also be reversed, there being no terminus from which the sentence under that indictment can be measured. This question is no longer an open one in this jurisdiction. Blitz v. United States, 153 U. S. 308, 38 L. ed. 725, 14 Sup. Ct. Rep. 924; Harris v. Lang,. 27 App. D. C. 84, 7 L.R.A.(N.S.) 124, 7 A. & E. Ann. Cas. 141. Punishment under the second sentence commences when the first sentence is out of the way; whether by lapse of time or reversal of judgment is immaterial.
The judgment in No. 26,689 is reversed, and a new trial awarded.
The judgment is affirmed in No. 26,690.