HENRY FREUND *et al.* Plaintiffs in Error, *vs.* LOUIS BECKER, Defendant in Error.

*Opinion filed June 18, 1908—Rehearing denied October 7, 1908.*

1. WILLS—*proof of prior will making same disposition of property is competent.* Proof that the testatrix had made a prior will making the same disposition of her property as is made by the will in contest is competent to be considered to rebut a charge of undue influence, and tends to show that the later will disposes of the property according to the desire of the testatrix, who made it because one of the witnesses to the former will had moved to an unknown location.

2. SAME—*when giving instructions stating abstract rules of law will not reverse.* Giving instructions stating correct abstract rules of law is not ground for reversing a decree in a will contest case, where the rules stated were involved in the case and it is clear that the jury could not have been misled by the instructions when considered in connection with the others given in the case.

WRIT OF ERROR to the Circuit Court of Clinton county; the Hon. S. L. DWIGHT, Judge, presiding.

This is a bill filed November 13, 1906, in the circuit court of Clinton county, to set aside the will of Ernestine Becker, deceased. The bill was filed by plaintiffs in error, Henry Freund, Emil Freund and Anna C. Schmidt, who are children of Caroline Freund, a deceased daughter of testatrix, against defendant in error, Louis Becker, a son

235—33

of testatrix. At the time of her death testatrix was eighty-eight years of age. It appears from the evidence that she came to this country from Germany, and with her husband lived upon a farm of sixty acres some two or three miles north of Breese, where her husband died in 1867. After the death of her husband testatrix lived with her only son, defendant in error, up to the time of her death,—a period of about thirty-nine years. The only children of testatrix were Caroline Freund, mother of plaintiffs in error, who died before the death of her mother; Louis Becker, defendant in error; and another daughter, who died single, before the execution of the will in question. For about twenty-six years after the death of testatrix's husband she lived with defendant in error upon the farm upon which they resided at the time of his death. In 1893, testatrix having inherited about $6000 from her brother, she and defendant in error purchased what is known as the Crocker farm, paying for the same $7500, of which sum testatrix paid $5000 and defendant in error $2500, the deed being taken in testatrix's name. They lived upon this farm to within a short time before her death, with the exception of a short period while they lived in Carlyle. Defendant in error improved the farm by building granaries, covering the house and barn and fencing and clearing some twenty or thirty acres. He received the rents from the farm. Later he bought a farm of his own and moved upon it a short time prior to the death of testatrix. Some ten or twelve years before her death she made a will devising the Crocker farm to defendant in error and either $500 or $1000 to her daughter, Caroline Freund. On September 24, 1903, she destroyed this will and executed the will in question, by which she gave $1000 to her daughter, Caroline, and all her other property, real and personal, after the payment of debts and funeral expenses, to defendant in error. Testatrix died July 16, 1906. The said will was admitted to probate in August following, and letters testamentary is-

sued to defendant in error. The amended bill, upon which the cause was tried, charged that at the time of making said will testatrix was not of sound mind, and that she did not execute the will freely and voluntarily, but that she was unduly influenced to make the same by her son, Louis Becker. It further charges that testatrix was imposed upon in the execution of said will by reason of the fact that she did not understand the English language and could not speak it and that the scrivener who wrote the will could not understand the German language and could not speak it, and that said will was, in fact, dictated to the scrivener by defendant in error, and that testatrix, by reason of her inability to understand and speak the English language, did not know the nature of said supposed will or what it contained. An answer was filed denying the material allegations of the bill as to mental incapacity, undue influence and fraud in the execution of the will. Issues were formed and the cause tried by a jury. At the conclusion of the evidence contestants withdrew from the consideration of the court and jury the averment in the bill that deceased was not of sound mind and memory.

J. J. McGaffigan, a lawyer who drew the will, testified he wrote it at the house of Louis Becker, defendant in error, with whom the testatrix resided. The other persons present besides witness and testatrix were Becker, his wife, and Murphy and Gray, who attested the will as witnesses. It appears from the evidence that some years before the last will was executed testatrix had made a will which was written by a lawyer named Lambe, who also attested the will as one of the witnesses. Peter Orrell was the other attesting witness to that will. McGaffigan testified that testatrix told him the reason she wished to make another will was, that Lambe, one of the witnesses to the first will, had removed to some other locality; that it was at the request of defendant in error witness went to the house where testatrix was; that Mrs. Ernestine Becker was German and

spoke English very imperfectly. He testified that when he went to her son's house, where she resided and where he wrote the will, she produced the former will made by her and spoke sufficient English to give him to understand that she wanted another will written the same, so far as the disposition of the property was concerned, as the previous will, giving as her reasons for making another will that Lambe, one of the witnesses to the first will, had left the country and she did not know where he was, and she appeared to have some apprehension about the will on that account. He testified the old will gave Caroline Freund $1000 and defendant in error the rest of testatrix's property, and he inquired of testatrix if in the will he was requested to write she wanted to make the same disposition of her property, and she said she did. He further testified that he received his information and instructions as to how Mrs. Becker desired the will to be written from her in such English as she could speak in response to his questions, and that defendant in error did not in any way assist him in talking with Mrs. Becker about making the will. The witness testified that after writing the will he read it over to her, but that he did not think she understood English sufficiently to understand from reading it, but he explained to her that by the will she was giving the farm to her son, Louis, and $1000 to her daughter, Caroline Freund, and she said that was what she wanted to do. He further testified that Gray, one of the witnesses to the will, could speak a little German and he explained it to Mrs. Becker. Defendant in error paid witness for his services in writing the will, but whether the payment was made with his own money or his mother's witness did not know.

The witness Gray testified he was present when McGaffigan wrote the will, and that McGaffigan asked Mrs. Becker questions which would be translated to her by defendant in error and her answer in German would then be translated by defendant in error into English; that to questions asked

Mrs. Becker by defendant in error she would say "yes" and "no," but witness was not sufficiently conversant with the German language to know whether defendant in error correctly translated McGaffigan's questions to Mrs. Becker or her answers to McGaffigan. The witness testified he had no recollection of having any talk, at the time the will was executed, with Mrs. Becker; that McGaffigan talked to her about giving the farm to defendant in error and $1000 to Mrs. Freund, and questioned her as to whether she knew and understood what she was doing; that she answered the questions "yes" and "no," and if the translations were properly made she did understand. Gray further testified that he did not hear Mrs. Becker speak any English at the time the will was prepared, and that he did not explain it to her unless to ask her in English whether she understood it; that before it was signed by the witnesses McGaffigan stated to all present how it disposed of testatrix's property, and witness thought it was translated to Mrs. Becker by her son, Louis, but he was unable to state whether it was correctly translated.

Murphy, the other witness to the will, testified McGaffigan asked Mrs. Becker questions about the will, and that, on account of her not understanding English very well, many of them had to be explained to her by defendant in error; that the talk was that the farm was to go to defendant in error, and that before witness signed the will it was so explained to her that he thought she understood and knew what she was doing. The witness testified he could understand some German words but could not speak the language, and that some questions asked by McGaffigan were translated to Mrs. Becker by defendant in error and her answers in German were translated also by defendant in error, and witness could not state whether these translations were correct or not. McGaffigan and Murphy both testified that when the last will was executed Mrs. Becker burned her former will.

John C. Lampen testified he talked with Mrs. Becker about the disposition of her property eleven or twelve years before her death and thought that he drew a will for her. He could not remember definitely its provisions. He spoke the German language and talked with Mrs. Becker in that language about the preparation of the will. He testified that Mrs. Becker desired the greater portion of her estate to go to defendant in error. He was to have the farm but was to pay a sum of money to some other legatee, the amount witness could not remember.

Peter Orrell, one of the witnesses to the will drawn by Lambe, testified it was read over to Mrs. Becker and explained to her before it was executed, and that she said she desired to give her daughter $500 or $1000,—the witness had forgotten which,—and the balance of her property to defendant in error. Orrell testified that his best recollection was Mrs. Becker said she had previously made a will and wished to change it. He further testified he could understand some German but not sufficient to carry on a conversation, and that Lambe, the other witness to the will and the man who prepared it, he thought was unable to speak and understand the German language.

The jury returned a verdict finding that said will was not obtained by the undue influence of said Louis Becker and that said instrument was the last will and testament of said Ernestine Becker. A motion for a new trial was made and overruled, and on December 12, 1906, a decree was rendered in accordance with the verdict of the jury and against complainants for costs, to the entering of which complainants excepted and have prosecuted this writ of error to reverse said decree.

LOUDEN & CROW, and MURRAY & BECKEMEYER, for plaintiffs in error.

THOMAS E. FORD, and WILLIAM WINKLEMANN, for defendant in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

It is the contention of plaintiffs in error that the terms and provisions of the will were dictated by defendant in error, and that on account of her inability to understand and speak the English language Mrs. Becker did not know what disposition was made of her property by the will. We have set out in the preceding statement the substance of the material portions of the testimony of the only three persons present who testified as witnesses on the trial. It will be seen that their memory of what occurred on the occasion of the execution of the will is not in all respects the same. McGaffigan, who wrote the will, testified Mrs. Becker spoke and understood sufficient English to give him to understand why she wanted the will made and how she desired to dispose of her property. Gray's memory was that her directions were given in German and were translated by defendant in error. Murphy, who understood a little German, testified the will was explained to Mrs. Becker and that he believed she understood it. The proof offered by defendant in error that Mrs. Becker had previously made wills in which she made substantially the same disposition of her property as was made by her last will, tends to support the proposition that said last will disposed of her property in accordance with her desire. Lampen testified she told him she intended defendant in error to have the farm, and his recollection is that he prepared a will for her giving defendant in error the farm and requiring him to pay a sum of money to a legatee, the amount of which he could not remember. The will drawn by Lambe, which Mrs. Becker destroyed when the will in controversy was executed, disposed of her property to the same persons and in the manner as said last will, and the proof shows that her only reason for making the will written by McGaffigan was that Lambe, who was one of the witnesses to the will written by him, was gone and his whereabouts unknown. Plaintiffs in error contend that the will written by Lambe was pre-

pared in the same manner as the will written by McGaffi-
gan. The proof tends to show that Lambe could not speak
or understand the German language, but Orrell, the other
witness to that will, testified he could understand a little
German and that that will was prepared according to the
directions and desires of Mrs. Becker. Prior wills contain-
ing the same provisions and making the same disposition
of property as a last will are competent evidence to be con-
sidered to rebut the charge of undue influence having been
exercised to procure the execution of the last will. (*Kaen-
ders* v. *Montague*, 180 Ill. 300.) The proof shows Mrs.
Becker had lived with defendant in error thirty-nine years
after the death of her husband; that defendant in error
paid $2500 of the $7500 paid for the farm, title to which
was taken in Mrs. Becker. Henry Becker, son of defend-
ant in error, called as a witness by him, testified, on cross-
examination, that Mrs. Becker, his grandmother, told his
father's children to work and pay the debts and the farm
would be their father's. Considering all this testimony, we
cannot say the jury were not warranted in finding that
Mrs. Becker knew and understood the terms and provisions
of the will.

It further appears from the evidence that after making
the will in controversy, and before her death, Mrs. Becker
executed a deed purporting to convey all of her real estate
to defendant in error, and a bill is pending in the circuit
court of Clinton county to set aside that deed. It was also
proven by plaintiffs in error that a short time before the
death of Mrs. Becker, McGaffigan wrote letters to each of
them, representing himself as Mrs. Becker's attorney, pro-
posing to give each of them $500 in settlement of any and
all right they might have to receive anything out of the
estate of their grandmother upon her death, and it is con-
tended the proof shows he did not represent and was not
employed by Mrs. Becker for this purpose but that he was
acting for defendant in error. The testimony is not very

clear upon this question, but it is not shown that Mrs. Becker had any knowledge of the writing of these letters and the offers made therein. They appear to have been written at the request of defendant in error, and whether he represented his mother is not shown. While there is some testimony of plaintiffs in error themselves to the effect that defendant in error objected to his mother making frequent or prolonged visits to her daughter, Caroline, toward the latter part of her daughter's life and during her last illness, it was not of a character to overcome the conclusions to be drawn from the other evidence, the weight of which we think tends to show that Mrs. Becker knew and understood what she was doing when she made her last will and that it represented her wishes and intentions as to the disposition of her property.

In our opinion the verdict of the jury and the decree of the circuit court were warranted by the evidence.

Objections are made to certain instructions given at the request of defendant in error. The principal objections are that they state abstract propositions of law and are not applicable to the facts of this case. It is true, some of the instructions merely state propositions of law; but the propositions of law were involved in this case, and when these instructions are read in connection with the other instructions given, it seems clear the jury could not have been misled by the instructions complained of. No single instruction could well embrace either the law or the facts involved in this case, but, taking the instructions for both parties together, we think no substantial error was committed by the court and that the issues were fairly submitted to the jury by the instructions given.

The decree of the circuit court is therefore affirmed.

*Decree affirmed.*