JONAS PILSTRAND, Appellant, *vs.* THE SWEDISH METHO-DIST CHURCH *et al.* Appellees.

*Opinion filed October 24, 1916.*

1. WILLS—*rule as to the burden of proof of undue influence in gifts causa mortis does not apply to wills.* The relation between a priest or spiritual adviser and a parishioner is a confidential one, which renders a gift *causa mortis* from the parishioner to the priest *prima facie* void, and the burden is upon the donee to prove the donor's intention to make the gift originated with the donor without the donee's influence; but this rule does not apply in the case of gifts by will.

2. SAME—*what does not raise presumption of undue influence by beneficiary.* Proof of the fact that the chief beneficiary in a will stood in a confidential relation to the testator at the time of the execution of the will does not, of itself, raise any presumption that he used undue influence.

3. SAME—*question of undue influence is one for the jury.* It is for the jury to say, under the issues submitted to them, whether the beneficiary influenced the testator by advising or suggesting or directing how the will should be made or coerced him into making the will, and the verdict will stand, on appeal, unless manifestly against the weight of evidence.

4. SAME—*prior wills showing same provisions are admissible to rebut charge of undue influence.* Prior wills containing the same provisions and making the same disposition of the property as a later will are competent evidence to be considered to rebut the charge of undue influence to procure the execution of the later will. (*Freund* v. *Becker,* 235 Ill. 513, followed.)

5. SAME—*when evidence of what was omitted in former will is admissible.* Ordinarily, in a will contest case, it is not proper to give evidence of what was not contained in a former will, but where the will is contested on the ground of undue influence, a

witness with whom the former will was deposited for safe keeping, although he is unable to remember all the contents of such will, may testify that said will contained no provision in favor of the contestant, who was a brother and the nearest living relative of the testator at the time of his death.

APPEAL from the Circuit Court of Henry county; the Hon. E. C. GRAVES, Judge, presiding.

ROOT & ROOT, and H. A. WELD, for appellant.

LAWRENCE C. JOHNSON, and NELS F. ANDERSON, for appellees.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

The appellant filed his bill in the circuit court of Henry county to contest the will of his deceased brother, Olof Pilstrand, on the ground of undue influence of the appellee Andrew G. Peterson. The defendants answered, denying the allegations of the bill. The complainant replied, and the cause was tried before a jury on the following issues: First, was the writing purporting to be the last will and testament of Olof Pilstrand, deceased, his last will and testament; and second, was said purported will procured by undue influence. A verdict was returned by the jury in favor of the proponents of the will and a decree was rendered dismissing the bill. Contestant perfected an appeal to this court.

The errors assigned that have been argued and are relied upon for reversal are, that the verdict of the jury was contrary to the evidence; the improper admission of evidence offered on the part of the proponents of the will, and the giving and refusal of certain instructions.

The testator, who was a retired farmer of Swedish descent, resided in the village of Bishop Hill. The will in question was executed September 24, 1912. The testator was then about the age of seventy-five years and had a wife

but no children or descendants of children. He died April 10, 1914, leaving his brother, the appellant, his only heir-at-law, his wife having pre-deceased him about a year. The testator had long been a member and officer of the Swedish Methodist Church of Bishop Hill. At the time the will was made appellee Peterson had been pastor of that church for about two years, and some six years before that time he had been pastor of a church in the city of Galva, about five miles distant, and had known the testator during that time. The testator lived near the church in the village and also near the residence of the pastor. They visited each other frequently and prayed together, and the testator had a great deal of admiration and friendship for the Rev. Peterson. According to the testimony of the latter, the testator, some two weeks before making the will, came to the minister's house and offered to give him all of his property to dispose of as he wished, but the latter advised him not to do so. Peterson testified further that the deceased had talked with him about making a will, and Peterson had given a memorandum to an attorney, Lawrence C. Johnson, in Galva, as to what the will was to contain. A few weeks afterwards, on September 24, 1912, Peterson took the testator in his buggy to Galva and to the office of the attorney, Johnson. There is a conflict in the evidence as to whether the will was already drawn when they arrived or was dictated to a stenographer after they arrived. The will was read to the testator, and at his request Peterson went out and returned with three men whom the testator had directed him to procure to act as witnesses, and the will was duly executed and witnessed and delivered for safe keeping to one of the witnesses, Oran E. Yocum, a banker of Galva, in whose bank the testator had a safety deposit box. By the will the testator, after directing the payment of his debts and funeral expenses, gave all his property to his wife, Martha Pilstrand, for and during her natural life, and provided that she might use from said property so much thereof as should

be necessary to maintain her in comfort as long as she should live. He further provided that upon the death of his wife should she survive him, or upon his death should he survive her, the said property should be divided into five portions, of which he bequeathed one portion to the Swedish Methodist Church of Bishop Hill to establish a fund to be known as the "Pilstrand Fund," the interest only to be used for the support of the ministry, and on the condition that the trustees of said church maintain and care for the family lot of the testator in the Bishop Hill cemetery. He bequeathed one portion to the Swedish Methodist Episcopal Theological Seminary at Evanston, Illinois, one portion to the fund for superannuated ministers of the Central Swedish Conference of the Methodist Episcopal Church, one portion to the Bethany Home, in Chicago, of the Central Swedish Conference of the Methodist Episcopal Church, and one portion to appellee Andrew G. Peterson, pastor of the Swedish Methodist Church of Bishop Hill. He also appointed Peterson executor of said will.

It is contended by appellant that the evidence establishes a confidential and fiduciary relation between Peterson and the testator, and also that the former procured the making of the will; that this being true, the presumption arises that undue influence induced the execution of the will, and the burden was cast upon the proponents of the will of showing, by clear and convincing evidence, that the execution of the will was the result of free deliberation on the part of the testator. Appellees claim that the evidence shows that the testator made the will in question freely and voluntarily; that he was not influenced by Peterson, and that the latter did nothing except, at the testator's request, to give him the correct names of certain of the beneficiaries named in the will, take him to the lawyer who drew the will, and get the witnesses who witnessed the execution of the will.

We have heretofore held that the relation between a priest or spiritual adviser and a parishioner is a confiden-

275 — 4

tial one, which renders a gift *causa mortis* from the parishioner to the priest *prima facie* void, and the burden is on the donee to prove that the donor's intention to make the gift originated with the donor, without the donee's influence. (*Dowie* v. *Driscoll,* 203 Ill. 480; *Gilmore* v. *Lee,* 237 id. 402.) This rule, however, does not apply in the case of gifts by will. (*Michael* v. *Marshall,* 201 Ill. 70; *Yess* v. *Yess,* 255 id. 414.) As stated in the latter case, on page 419 of the opinion: "To place the burden of proof upon one standing in a confidential relation to show the absence of fraud or undue influence in the making of a will, such person must be shown to have been directly connected in some manner with the making of the will.—*In re Will of Barry,* 219 Ill. 391." See, also, *Lloyd* v. *Rush,* 273 Ill. 489.

As to the question of the burden of proof, a similar question arose in the case of *Michael* v. *Marshall, supra,* in which it was held that proof that the executor had been the guardian of the testatrix until a short time before the will was made and that members of his family were substantially benefited by the will, which he assisted in preparing no further than to request the attendance of witnesses, did not cast upon the defendants the burden of proving there was no undue influence, although such facts might be considered by the jury as bearing upon the question. In discussing this question it is said on page 76 of the opinion: "As a matter of law, the burden of proof in any case is determined by the issues and it does not shift, but at the end the party upon whom the burden rests by the pleadings must have sustained his position by a preponderance of evidence. (*Phelps* v. *Jenkins,* 4 Scam. 48; *Slingloff* v. *Bruner,* 174 Ill. 561; 5 Am. & Eng. Ency. of Law,—2d ed.—30.) The burden of proof is often spoken of as equivalent to the duty of introducing evidence to meet or overcome a *prima facie* case, and in asking the court to instruct the jury that by the proof of certain facts the burden was cast on the defendants, the complainant in fact sought to have the court tell the jury

that such facts constituted a *prima facie* case for complainant on the question of undue influence."

The relationship of the testator and appellee Peterson was established by the evidence, but as to whether he influenced the testator by advising or suggesting or directing how the will should be made or coerced him into making the will was a question for the jury. We have read with care all the evidence in the record on this point, and we are unable to say that the verdict was manifestly against the weight of the evidence. If, as claimed by appellant, Peterson went to the attorney who drew the will and instructed him how to draw it, and after it was prepared took the testator to the attorney's office and had him execute the will he had caused to be prepared, then undue influence would be presumed and the will should be set aside as not the will of the testator, unless it be further established by the evidence that the will as drawn after all expressed just what the testator wanted, free from any action or influence of the beneficiary, Peterson. Conceding that the burden of proof was on Peterson to show that the bequest to him of the one-fifth portion of the testator's estate was the free and voluntary act of the testator, uninfluenced by him, he was called as a witness by the contestant. The attorney, Johnson, who drew the will, and the stenographer to whom it was dictated, also testified. The circumstances surrounding the making of the will were fully brought out. It was for the jury to say, under the issues submitted to them, whether the will in question was the result of undue influence, and we are unable to say that the verdict of the jury was palpably against the weight of the evidence or that the proponents failed to overcome the presumption which the contestant claims should be inferred from the relationship and actions of appellee Peterson.

The testator had made a prior will several years before, which had been left in the custody of a banker, Jacob Jacobson, at Bishop Hill. Jacobson was called as a witness, and

was allowed to testify, over the objection of the contestant, that the contestant had not been made a beneficiary by such prior will. In *Freund* v. *Becker,* 235 Ill. 513, we held that prior wills containing the same provisions and making the same disposition of the property as a last will and testament are competent evidence to be considered to rebut the charge of undue influence having been exercised to procure the execution of the last will, and in *Kaenders* v. *Montague,* 180 Ill. 300, it is said on page 307 of the opinion: "Where a testator, being of sound mind and free from the control of any undue influence, disposes of his property by a prior will, and the disposition which he thereby makes of his property approximates very nearly to the provisions of the will which is contested, such circumstance tends to rebut the idea that undue influence has been exercised to procure the execution of the last will. (*Roe* v. *Taylor,* 45 Ill. 485; *Taylor* v. *Pegram,* 151 id. 106.) We have also held that where a will is charged to have been executed through undue influence, the declarations of the testator made before its execution are admissible, by way of rebuttal, to show his intention as to the disposition of his property, upon the ground that a will made in conformity with such declarations is more likely to have been executed without undue influence than if its terms are contrary to such declarations.— *Harp* v. *Parr,* 168 Ill. 459; *Goodbar* v. *Lidikey,* 136 Ind. 1." An examination of the evidence of Jacobson shows that it was sought to prove by him the contents of such former will. He had known at one time of the provisions of such will but could not remember all of its contents. He did remember that the will contained no provision in favor of the contestant, who was the nearest living relative of the testator at the time of his death. This evidence was brought out in connection with statements made by the testator to Jacobson and others as to the reason why he did not leave his brother, the contestant, anything, the reason assigned being that the brother had enough, and the further fact that

the brothers had had a disagreement several years before, the contestant claiming that the testator owed him money ·which he should have contributed to the support of their father, and had coerced him into deeding him ten acres of land to even up the account between them, which action of his brother the testator resented. While ordinarily it would be improper to give evidence of what was not contained in a former will, we do not think, under the facts in this case, that the evidence was improper or at least was not reversible error.

Instructions Nos. 2, 7 and 12 given on behalf of the proponents are complained of, on the ground that they direct a verdict for the proponents. An examination of these instructions discloses that they are free from such objection. Instruction No. 2 instructed the jury that if they found, from the evidence, that the testator, by reason of gratitude and affection for Peterson and his attachment for the Swedish Methodist Church, desired to assist other beneficiaries of the church by making the claimed will, and of his own mind and will signed the will in question, then the document was a valid one, and they should answer yes on the first issue of law submitted and no on the second. The case went to the jury on both the issues originally submitted, and the instruction, in effect, simply told the jury, if they found, from the evidence, that the testator had reasons for making his will and did so of his own free will, how they should find on the issues. Instruction No. 7 informed the jury that if they believed, from the evidence, that the testator had a settled and determined purpose that no portion of his estate should go to Jonas Pilstrand, the contestant, they could take such purpose into consideration in determining whether the paper introduced in evidence was his last will and testament or was procured by fraud and undue influence. We see nothing wrong with this instruction under the facts in this case. Instruction No. 12 informed the jury that undue influence, in order to render a

will invalid, must be connected with the execution of the will and operating at the time the will was made, and the fact that the beneficiaries of the will, or some of them, were those by whom the testator was surrounded and with whom he stood in confidential relations at the time of the execution of the will, or the fact that the provisions of the will were for the benefit of those persons, or that the provisions of the will may seem unreasonable, are not, alone, grounds for inferring undue influence, and if the jury believed, from the evidence, that the testator had sufficient mind and memory at the time of the execution of the will to know and understand the business he was engaged in and recollected the property he meant to bequeath and the persons to whom he meant to give it, and that he executed said alleged will freely and voluntarily, and there was no substitution of the will of the Rev. Peterson for the will of Olof Pilstrand, then they should find that the will was not procured by undue influence. We think that this instruction would be fairly understood to mean merely that the fact that the beneficiaries in the will, or some of them, were those with whom the testator stood in confidential relations or was surrounded at the time of the execution of the will, is not, alone, ground for inferring undue influence.

Even under the rule contended for by contestant, in order to create a presumption of undue influence in the making of a will the fact must appear that the parties in whose favor the will is made actually procured or in some way influenced the making of such will. An examination of the entire series of instructions shows that the court instructed the jury in behalf of the contestant fully and fairly on his theory of the case, and in at least three instructions (Nos. 4, 9 and 10) given on behalf of the contestant the court instructed the jury as to the presumption of undue influence fully as favorably as he was entitled to. In instruction No. 4 the jury were informed that the presumption of un-

due influence arises when it appears that a beneficiary under the will occupied a fiduciary or confidential relation toward the testator or person making the will, and that such beneficiary was the dominant party and the testator the dependent party and the beneficiary had the will drawn according to his directions, and when such a presumption arises it can be overcome only by proof that the alleged will was not obtained by undue influence. By instruction No. 9, which is a long one, the jury were instructed that if they believed, from the evidence, (setting out the leading facts in the evidence surrounding the relationship of the parties and the execution of the will as heretofore given,) that then the law presumes the alleged will to have been obtained by undue influence of said Peterson upon Pilstrand, and that such presumption must continue and prevail unless it is overcome by proof that said alleged will was not obtained by undue influence. Contestant's given instruction No. 10 was to the same effect as instructions Nos. 4 and 9. In all, fifteen instructions were given by the court on behalf of the contestant and thirteen were refused. Only one of the refused instructions is referred to in the argument, and we think that was sufficiently covered by the other instructions.

From a consideration of the entire record it sufficiently appears that there was a fair trial and that the contestant was given full opportunity to prove his case and show that the will in question was the result of undue influence exercised by appellee Peterson. The question was fairly submitted to the jury, and we see no reason why the verdict, and the decree founded thereon, should be disturbed, and the decree will accordingly be affirmed.    *Decree affirmed.*